# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI

DeAuntree' Poe #1176441
(full name)       (Register No).

Plaintiff(s).

v.

Case No. 19-3376-CV-S-RK-P

Allen Finsell
(Full name)
Jess Norman
Dakota Brown
Defendant(s).

Defendants are sued in their (check one):
☑ Individual Capacity
☑ Official Capacity
☑ Both

## COMPLAINT UNDER THE CIVIL RIGHTS ACT OF 42 U.S.C. § 1983

I. Place of present confinement of plaintiff(s): South Central Correctional Center, 255 W. Hwy 32, Licking, Mo 65542

II. Parties to this civil action:
Please give your commitment name and any another name(s) you have used while incarcerated.

A. Plaintiff DeAuntree' Poe        Register No. #1176441
Address South Central Correctional Center,
255 W. Hwy 32, Licking, Mo 65542

B. Defendant Allen Finsell, Jess Norman

Is employed as Allen Finsell (COI Sergeant) Jess Norman (Former Warden/Dr of DOC)

For additional plaintiffs or defendants, provide above information in same format on a separate page.

1

III. Do your claims involve medical treatment? Yes ___ No ✓

IV. Do you request a jury trial? Yes ✓ No ___

V. Do you request money damages? Yes ✓ No ___

State the amount claimed? $30n / 15 (actual/punitive)

VI. Are the wrongs alleged in your complaint continuing to occur? Yes ___ No ✓

VII. Grievance procedures: Exhausted

   A. Does your institution have an administrative or grievance procedure?
   Yes ✓ No ___

   B. Have the claims in this case been presented through an administrative or grievance procedure within the institution? Yes ✓ No ___

   C. If a grievance was filed, state the date your claims were presented, how they were presented, and the result of that procedure. (Attach a copy of the final result.)
   A grievance was filed 8-21-18 un a Category 7 Excessive use of force.

   D. If you have not filed a grievance, state the reasons.
   _____
   _____
   _____

VIII. Previous civil actions:

   A. Have you begun other cases in state or federal courts dealing with the same facts involved in this case? Yes ___ No ✓

   B. Have you begun other cases in state or federal courts relating to the conditions of or treatment while incarcerated? Yes ___ No ✓

   C. If your answer is "Yes," to either of the above questions, provide the following information for each case.

      (1) Style: _____
          (Plaintiff)                    (Defendant)
      (2) Date filed: _____

2

Case 6:19-cv-03376-RK    Document 1    Filed 10/23/19    Page 2 of 13

(2)

C. If a grievance was filed, state the date your claims were presented, how they were presented and the result of that procedure.

The complaints was allegedly place under institutional inquiry (Investigation) on 11·2·18. Throughout the grievance process my claims were denied stating; "The incidents has been referred for investigation. You will not be provided the outcome of the investigation." The complaints was properly exhausted through the institution's grievance procedure stages.

(3) Court where filed: _____

(4) Case Number and citation: _____

(5) Basic claim made: _____

(6) Date of disposition: _____

(7) Disposition: _____
(Pending) (on appeal) (resolved)
(8) If resolved, state whether for: _____
(Plaintiff or Defendant)

For additional cases, provide the above information in the same format on a separate page.

IX. Statement of claim:

A. State here as briefly as possible the facts of your claim. Describe how each named defendant is involved. Include the names of other persons involved, dates and places. Describe specifically the injuries incurred. Do not give legal arguments or cite cases or statutes. You may do that in Item "B" below. If you allege related claims, number and set forth each claim in a separate paragraph. Use as much space as you need to state the facts. Attach extra sheets, if necessary. Unrelated separate claims should be raised in a separate civil action.

On 8-19-18 after lunch trays were served and as they were being picked up, I declared protective custody (P.C.) from then cellmate Laurence Brandon #1274715. My P.C. was granted and I was removed from the cell and placed on the restraints bench in A-wing of the housing unit. Once on the restraints bench I attempted to eat a sandwich/cupcake that I had concealed on my persons from the lunch trays. At that time COI Tidwell and COI Brown entered A-wing through A-wing sally-between door. COI Tidwell observed me eating. (see Attachments)

B. State briefly your legal theory or cite appropriate authority:

The Eighth Amendment to the U.S. Constitution protects me as a prisoner to not be treated with cruel and un-usual punishments. For me to have been pepper sprayed twice while in four corner restraints for reasons as minute as eating a sandwich and becoming verbally aggressive constitutes an excessive use of force claim.

A use of force constitutes as excessive and violates (see Attachments)

3

pg. 2           (3)

IX. Statements of Claim:

A. the sandwhich and instructed COI Brown to confiscate the food from me. COI Brown attempted to take the sandwhich away from me at which time I refused. COI Fuwell intervened and drew his mace can as if he were going to pepper spray me. At that moment I released the sandwhich and was immediately pepper sprayed right after. COI Fuwell then left the wing and returned a couple of minutes later with a larger can of pepper spray after seeing that the smaller can (MK4) had little to no effects on me.

I was then pepper sprayed and assaulted with chemical agents by COI Fuwell after an exchange of words and obscenities between us two as I sat handcuffed in four corner restraints restrained to the restraints bench.

The use of force by (OC) chemical agents was administered in malicious, retaliatory & vindictive intent for me becoming verbally belligerent, talking back to him in a manner in which he disapproved.

COI Fuwell left me to sit burning in agonizing pain for hours on the restraints bench and in the strip cage in A-wing of the housing units (H.U.#2). Fuwell refused me assessment by medical personnell and for medical staff to treat me properly with medicated saline solution.

Former Warden Jess Norman is involved because after filing a grievance he did nothing to correct the issue other than place it under investigation.

After the defendants A. Fuwell hose me down at point blank range with chemical agents on the two separate occasions within a five minute time frame, he then attempted to cover up his assaults against me with unjust justification, by stating that I attempted and succeeded in my attempts in assaulting him by issuing me two bogus conducts violations.
The firsts cdv was for a rule# 10.1 Minor Assaults; stating that I attempted to kick him while in four corner restraints as I was restrained to the restraints bench. The second cdv was for a rule# 2.2 Major Assaults, alleging that I spit on his right shoulder, neck and down his back. In results of being found guilty of these bogus violations, I have been in the administrative segregation unit over a year.

B.  State briefly your legal theory or cite appropriate authority.

the Eighth Amendment when it is not applied in an effort to maintain or restore discipline but is used to maliciously and sadistically to cause harm. Where a prison official is responsible for unnecessary and wanton infliction of pain, the Eighth Amendments has been violated.
"Excessive Force" is any physical contacts by a guard that is meant to cause harm, rather than keep order.
As stated above in my "statements of claim", the defendants Allen Fuwell administered an unnecessary use of force when he first decided to utilize "O.C. spray" (chemical agents) because I was eating or attempting

to eat a sandwhich while on the restraints bench. Furthermore, the defendants violated institutional policy "Use of Force" and SOP 21-1.2 Administrative Segregation by utilizing chemical agents on an offender while I sat restrained in four corner restraints. Four corner restraints as define by MDOC guidelines is; "When an offender is shackled with mechanical leg irons and handcuffed by the wrists with mechanical wrists restraints for the safety and security of the institution." Therefore, for me to have been in four corner restraints, handcuffed behind my back and shackled by my ankles secured to the restraints bench, proves that I posed no security threats to the defendant Allen Fuwell nor his subordinate COI Danora Brown, furthermore providing undisputtable evidence that Fuwell so called "spontaneous" use of force wasn't so spontaneous and was premeditated unnecessary and malicious (Hudson v. McMillian, 503 U.S 1 (1992)).

As explained in my administrative grievance procedure, the defendants pepper sprayed me the first time with the small can of mace (MK4) when I refused to give up the sandwhich. After being maced with the MK4, the defendants then left to return minutes later then proceeded to spray me at pointsblank range with the big can (MK9) of pepper spray after an exchange of words between us both. By COI Fuwell macing me the first time, then leaving to retrieve an even larger can eliminates the "spontaneous" use of force theory and further substantiates the theory of wanton infliction of pain.

The facts thats I was handcuffed to the back of me, while cuffed to the restraints bench eradicates the assumption thats Fuwell was trying to restore order, and/or discipline. As stated before, I posed no immediate security threats. And I was in such a vurnerable position due to the handcuffs and shackling that the sandwhich could've been merely snatched out of my hand, as it was after the facts; the use of force was utilized. The use of force should not have never happen to begin with. The use of force was utilized to intentionally and sadistically cause me a wanton infliction of pain and suffering.

To satisfy the courts analysis of the claim herein, I will further evaluate the four spectrums of (Hudson v. McMillian) to showcase thats the excessive use of force was inflicted as wanton and unnecessary.

1). the need for the application of force: There was'nt any. The facts thats I was secured in four corner restraints should be application enough thats I posed no threats to the safety and security of the officers doing their job.

2). the relationship between the need and the amount of force used: Again, there was'nt any need. The relationship between the need and the amount of force used intiated from a sandwhich. A sandwhich that could've been taken away peacefully without the need or cause for an use of force. And although the injury thats I suffered was'nt significants, the injury thats I suffered was indeed agonizing. Due to

pepper spray that's dispensed upon me, every time that I washed my hair in an attempts to rid my hair of the chemical agents I experience the agonizing burning on my face, down to my genital region over and over again. The mace did not come out of my hair for atleast six to seven months.

3). <u>the threats reasonably perceived by the responsible officials</u>: As stated earlier on, there was not any "reasonable" threats that should have, could have or would have permitted the defendant W. Fuwell to utilize an use of force beyond our screaming obscenities at each other, due to my being restrained in four corner restraints.

However, even if the allegation of me spitting at or on the defendants were to be true and rendered the perceived "reasonable threats", the use of force will still be constituted as unjustifiable according to <u>SOP 21·1·2 Administrative Segregation policy.</u> According to SOP 21·1·2 pg 23 of 33 paragraph 3-4 states: "Offenders who have attempted to spit on staff or other offenders may be required to wear a spit mask while outside of their cell as a condition of their hazardous propellants status. This requirement will remain in effects for up to a period of 60 days in accordance with those procedures regarding mechanical restraints and will be stated in the letter to the offender if applicable.

<u>SOP</u>: "Each offender required to wear a spit mask will don the mask any time the food ports is to be opened and before being removed from his cell for any reason. The mask should only be removed for a haircuts, shower

or medical need. Refusal to don the mask will be deemed as his refusal to participate in the activity or service and a conducts violation will be issued. If he refuses to replace the mask after having participated in an activity or service before being returned to his cell, a conduct violation will be issued. If the offender destroys his spits mask, he will be issued a cdv for destroying property and will be issued another mask." . . . Thus, I state, if the "reasonable threat" is to be perceived that I spit on him, then why wasn't standard operating procedure and institutional procedure carried out? My ICR (inmate confinements record) does not and will not show that I was placed on any special security orders/spits mask status for this alleged Maps assaults incidents thats was supposed to had occurred.

4). <u>any efforts made to temper the severity of a forceful response</u>; As I've repetively stated, I was placed in four corner restraints, so beyond me merely talking no matter how derogatory, the situation should have already been tempered. I wasn't given a verbal directive or warning to do nor stop doing anything. The fact thats the defendants had already engaged in a verbal spats with me, after first, utilizing a use of force over the disposal of the sandwhich, then back it's with a second round of excessive use of force constitutes him behaving unprofessionally violating departments policy <u>D2-11.10 Staff Conduct</u>, and further showcases thats the defendant did not put any efforts to defuse or temper the severity of the use of force, only to heighten it.

pg 8 (3)

Additionally, the Eighth Amendment also protects my rights to adequate and proper medical care. The Constitution guarantees me this rights as a prisoner. The fact that I was left to burn in agonizing pain without any access to water for 4.5 hrs without any medical assistance nor assessments from medical personnel violates my rights of Cruel & Unusual Punishments to the Eighth Amendment. I could not see. I could not breathe. I could not talk. I was maced so severely that my face was literally painted orange. I had pepper spray literally dripping from my face, neck & hair.

As an inmate, I must rely on prison authority to treat my medical needs; if the authorities fail to do so my needs will never be met, as was the case with this matter. The proper authorities and staff knew about the situation at hand, witnessed the confrontation first hand and deliberately ignored my cries & dire need for medical assistance. In fact, the defendants and their subordinates & colleagues all went to the back office (classification) and laughed at me as I layed sprawled out on the restraint bench gasping for air. Other offenders in the wing began kicking their doors in an attempts to get the officers attention inorder to get me seen by medical, but they intentially ignored me.

X. Relief: State briefly exactly what you want the court to do for you. Make no legal arguments.
I want the courts to award me monetary damages of amounts requested and to uphold an permanents injunction in the DOC that inmates cannot be pepper sprayed while in 4 corner restraints unless dire circumstances exist.

XI. Counsel:

A. If someone other than a lawyer is assisting you in preparing this case, state the person's name. _____

B. Have you made any effort to contact a private lawyer to determine if he or she would represent you in this civil action? Yes ___ No ✓

If your answer is "Yes," state the names(s) and address(es) of each lawyer contacted.
_____
_____
_____

C. Have you previously had a lawyer representing you in a civil action in this court? Yes ___ No ✓

If your answer is "Yes," state the name and address of the lawyer.
_____
_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed (signed) this October day of _____ 2019

DeQuintee Poe
Signature(s) of Plaintiff(s)

4

Mr. DeLumber's for MEAHY
3666
255 W. Hwy 30
Lebanon, Mo 65536

RECEIVED
2019 OCT 23 PM 1:15
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF MO
KANSAS CITY, MO

SCREENED BY
U.S. MARSHAL

Clerk's Office
United States Dist. Court
Western Dist. Of Missouri
Kansas City, Mo 64106



